[No. B002667. Second Dist., Div. Four. May 7, 1984.]

MOTOWN RECORD CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TINA MARIE BROCKERT et al., Real Parties in Interest.

---

**COUNSEL**

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey and Alan G. Dowling for Petitioners.

No appearance for Respondent.

Engel & Engel, Donald S. Engel and James P. Cinque for Real Parties in Interest.

**OPINION**

**WOODS, P. J.**—This original proceeding in mandate was initiated by civil plaintiffs who seek review of a trial court order which determined that they had not timely complied with a prior order requiring a factual showing of the basis of their claims that certain documents are protected by the attorney/client and attorney work product privileges. The order imposed the sanction of compelling full production and declared that any such existing privilege was "waived."

The issues presented are (1) whether the sanction is excessive for the purpose of ensuring appropriate discovery and (2) whether a waiver of privilege may lawfully be declared by a court on the basis of a party's late offer of a factual showing on his claim of privilege.

For the reasons later discussed in detail, we conclude that the sanction was excessive because it is punitive in nature and not reasonably related to the purpose of effecting the discovery due. We also conclude that the minimally late effort to demonstrate a factual basis for plaintiffs' claim

of privilege may not be deemed to be a waiver of privilege, as such conduct is not recognized by statute or case law as effecting a waiver of privilege.

The discovery events giving rise to the present dispute are numerous and convoluted. The material facts are here summarized without reference to the other discovery disputes which pervade the procedural history of the action.

In August 1982, a few weeks after commencement of the underlying action, defendant, Tina Marie Brockert (hereafter defendant), filed her cross-complaint and served plaintiffs with a notice of deposition and request to produce which described several classes of documents. The documents are related to the parties' contractual disputes concerning defendant's obligations to produce new song materials and perform for plaintiffs and the ownership of existing materials. Plaintiffs filed objections to production claiming, inter alia, that documents within certain classifications (all documents reflecting calculations of payments to defendant; all documents evidencing plaintiffs' extraordinary promotional efforts relative to defendant's "Fourth Album," and all checks evidencing plaintiffs' alleged expenditures) "are protected by the attorney/client privilege."

In November 1982, defendant filed a motion to strike plaintiffs' pleadings based on plaintiffs' failure to verify that they had produced all of these documents. Plaintiffs filed opposition. At the December 6, 1982, hearing on the motion, respondent ruled that plaintiffs were being evasive in refusing to verify that they had fully disclosed all nonprivileged documents and information sought. Monetary sanctions of $500 were awarded to defendant. Respondent also ordered that ". . . to the extent that any documents falling within the . . . [prior order for discovery] are believed to be privileged, such documents must be described in a manner which will allow review, without disclosing the content of the documents, and the facts warranting the privilege set forth under oath by a person with knowledge of such facts. [¶] Now, if you get all that, you can decide whether you want to seek a further order."

Later in December 1982, plaintiffs served and filed their "Further Response to Request for Production of Documents." This consisted of eight pages of unnumbered items with cryptic descriptions under the top-of-page headings "Nature: Date: From: To: Concerning." A typical item description corresponding to these headings is "Memo; 4/20/82; Jack Lorenz; Lee Young, Jr.; Jay Lasker; Teena Marie." The subsuming heading on the first page identifies all items as "confidential documents withheld from production due to attorney/client privilege or attorney work product doctrine." Other than this there was no statement corresponding to individual docu-

ments indicating the capacity of the sender or receiver or that the item had been directed to or by counsel in confidence for the purpose of legal counsel or work. The descriptions were accompanied by a standard printed-form general verification executed by Lee Young, Jr.

Defendant responded to this insufficient "further response" by filing a second motion to strike plaintiffs' complaint. This motion resulted in plaintiffs' filing what they denominated their "supplemental response to request for production of documents" which was merely their prior list, described above, with "expanded descriptions" of some of the documents inserted by interlineation. This supplemental response, accompanied by pleadings dated March 2, 1983, does not appear to have been supported by any verification. Like the original list, the supplement does not contain any verification of the capacity of the authors or recipients of these documents as of the dates of preparation and transmittal nor any real indication that the purpose and content of the documents is such as to qualify for the attorney/client privilege. Nevertheless, plaintiffs contended that they had provided the requisite showing of facts sufficient to support the claims of privilege and that the burden was upon defendant to rebut the presumption.

At the March 7, 1983, hearing on defendant's second motion to strike the complaint, respondent determined that plaintiffs' responses to its prior order of December 6, 1982, were deficient. "Plaintiffs will furnish sufficient reason to support the claim of attorney client privilege within 20 days or the court will simply order the documents produced. Continue hearing to date below [April 12, 1983]. Plaintiffs ordered to pay $514 to defendant for fees and costs . . . ."

Plaintiffs and defendant stipulated that the March 28, 1983, deadline pursuant to respondent's March 7 order would be extended to 12:30 p.m. on March 31. Defendant's counsel declares that he never consented to further extension of the deadline beyond 12:30 p.m., March 31.

Plaintiffs did not serve their statements upon defendant's counsel until the morning of April 1, 1983. These pleadings which were personally served consisted of 17 pages of greatly improved and more detailed description of the content and purpose of each of the 108 listed documents. This was accompanied by a supporting declaration executed by Lee Young, Jr., attesting in detail to his personal knowledge of the purpose and content of approximately 70 of the documents and to his dual capacity as vice president of Motown since 1976 and as in-house counsel for plaintiffs from "early 1981." Young averred that each document constituted legal counsel or legal analysis communicated between attorney and client. These included documents transmitted from 1976 to 1981 when his sole formal capacity was as

vice president, but he avers that he functioned informally as legal counsel. Enclosed was the unexecuted declaration of Ralph Seltzer, general counsel for Motown in 1975 and 1976, which was a verification of the description of some 38 of the 108 listed documents. The April 1 transmittal letter explained that Mr. Seltzer had not yet returned an executed copy of his declaration to plaintiffs but had authorized them to represent that he would execute it in its present form. The Seltzer declaration was not actually executed until April 6, and the executed copy was not served upon defendant's counsel until April 11.

In her April 7, 1983, supplement to her motion to strike, defendant points out that three of the documents listed by plaintiffs as privileged (numbers 35, 41, and 93) had already been disclosed in discovery and do not contain the legal counsel or legal analysis or appearance of intended confidentiality claimed.

In particular, the document listed by plaintiffs as number 93 is described by them as a March 6, 1980, interoffice letter requesting legal advice from Lee Young, Jr., in his capacity as in-house counsel for Motown. However, this letter was written in 1981, before Mr. Young became legal counsel for Motown. It is a request for a business decision as to whether to continue certain biweekly advances to "Jobette and MRC." Similarly, the document listed as number 35 is described by plaintiffs as containing the legal opinion of their legal staff concerning a contract. In fact, that document is merely a terse, one-page objective summary of the salient terms of the contract and contains nothing which could be characterized as a legal opinion. Finally, the third disclosed document, number 41, is a May 7, 1976, memorandum claimed to be from plaintiff's legal staff setting forth "in abstract form" their "legal interpretation" of a certain contract involving defendant. Review of this document reveals that it too is a straightforward summary of the basic terms of the contract and is devoid of any legal analysis or legal opinion concerning the validity or meaning of any uncertain terms or intendments.

At the continued April 12 hearing, respondent referred the voluminous and continuing discovery disputes between plaintiffs and defendant to a referee pursuant to section 639 of the Code of Civil Procedure.

The referee issued tentative findings and recommendations on September 30, 1983. He found that plaintiffs had failed to timely comply with the March 7 order and had not served the executed Seltzer declaration until April 11. He further found that "[t]he failure to comply with the court's order [of March 7, 1983] in a timely manner resulted in a waiver of any privilege." He recommended that "plaintiff [sic] be ordered to produce all

the documents described in defendant's request within twenty days," and to pay attorneys' fees of $1,000. This monetary sanction was based, in part, upon plaintiffs' meritless objections to written interrogatories, which the referee recommended be answered.

Plaintiffs moved for modification of the referee's tentative findings and recommendations, asserting that their slight tardiness in compliance (one day as to service of the required papers and ten days as to service of the Seltzer declaration which concerned only a portion of the disputed documents) did not justify the severe sanction recommended and that the purported finding of a waiver of privilege was unauthorized by statutory or case law.

On November 15, 1983, respondent adopted the referee's findings and recommendations in toto and ordered plaintiffs to produce within 20 days all the documents to which they had asserted privilege. The court made the additional inclusive finding that "plaintiffs' failures were wilful and without substantial justification." Notice of that order was ordered served by defendant. The present record does not provide a copy of the attorney's notice or the proof of service thereon.

The present petition was filed herein on December 13, 1983. We issued the alternative writ and set the matter for hearing.

I

█ It is the established rule that trial court rulings concerning discovery sanctions will generally not be reviewed by extraordinary writ and that the aggrieved party has an adequate remedy on appeal after judgment. (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643].) Exceptions to this rule exist where compelled disclosure of a claimed privilege is threatened. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309]; *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 415 [15 Cal.Rptr. 119, 364 P.2d 295].)

We issued the alternative writ in this proceeding because the challenged order threatens a compelled disclosure of materials as to which a privilege is claimed.

Section 2034, subdivision (b)(2) of the Code of Civil Procedure provides that when a party "refuses" to obey an order directing discovery "the court

may make any orders in regard to the refusal which are just, including, but not limited to, . . . :" (A) designating the subject of the requested discovery be deemed established in favor of the party seeking the discovery; (B) prohibiting the disobedient party from urging or contesting the particular issues or claims to which the discovery relates; (C) striking the disobedient party's pleadings or dismissing his action or rendering default judgment against him or prohibiting his own discovery until the order is obeyed; (D) requiring the disobedient party to pay to the party obtaining the order the reasonable expenses incurred, including attorneys' fees, and (E) directing the arrest of the disobedient party. Subdivision (a) authorizes contempt punishment.

■ To justify imposition of such discovery sanctions, the trial court must expressly find that the disobedient party's failure to obey was wilful. (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 118-119 [54 Cal.Rptr. 721]; *Weinkauf* v. *Superior Court* (1966) 64 Cal.2d 662, 664 [51 Cal.Rptr. 100, 414 P.2d 36].) The burden of proof is upon the disobedient party to establish the lack of wilfulness of his failure to perform. (*Cornwall* v. *Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250, 252-253 [135 Cal.Rptr. 761].)

■ The fundamental rule by which the appropriateness of discovery sanctions is judged is well stated in *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, at page 303-304 [10 Cal.Rptr. 377], as follows: "The trial court has a wide discretion in granting discovery and by the provisions of section 2034 of the Code of Civil Procedure it is granted broad discretionary powers to enforce its orders but its powers are not unlimited. . . . [¶] The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of discovery but to impose punishment. [Citations.]"

This rule has been applied in numerous discovery sanction situations, none of which is squarely controlling upon the present case. However, the closest case appears to be *Cohen* v. *Superior Court* (1976) 63 Cal.App.3d 184 [133 Cal.Rptr. 575]. In *Cohen* a defendant served timely responses to plaintiff's requests for admissions but supported its admissions and denials solely upon information and belief. A local court rule required verification by personal knowledge and the responses were thus deemed ineffective. Defendant moved for relief on the basis of ignorance of the local rule and sought to amend his responses by providing an appropriate verification upon personal knowledge. The motion was denied and all matters denied were deemed admitted by default. In the resulting mandate proceeding this court held that the trial court had abused its discretion because the sanction, al-

though specifically authorized by statute, was too severe in view of the fact that defendant's defective response did not significantly prejudice plaintiff because plaintiff was at least timely put on notice that defendant intended to deny certain requests. The failure to serve competent responses was not a willful refusal to comply with discovery.

Similarly, in *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 118-121 [54 Cal.Rptr. 721], defendant's objections to certain written interrogatories were overruled and he was ordered to serve answers by a date certain. Instead of complying, defendant filed a petition for writ of mandate on the last day designated for compliance. The petition was summarily denied the next day and defendant filed a petition for hearing. Plaintiff moved for sanctions for disobedience and the hearing thereon was continued to await a ruling on the petition for hearing. Five days after the Supreme Court denied hearing the plaintiff's motion was heard without defendant having served his answers. The trial court found defendant's failure to obey was wilful and imposed $200 additional sanctions. In the resulting mandate proceeding the order imposing sanctions was vacated as an abuse of discretion. It was reasoned that defendant had the lawful right of review by extraordinary writ and petition for hearing and the record did not support the finding that availment of this remedy to the temporary exclusion of compliance with the discovery order was a wilful refusal to obey the order requiring answers to interrogatories by a date certain.

Finally, in *Morgan* v. *Ransom* (1979) 95 Cal.App.3d 664 [157 Cal.Rptr. 212], a personal injury plaintiff acting in propria persona was delinquent in filing answers to written interrogatories and the sanction of dismissal was imposed. Following the general rule stated in *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, this court reversed the dismissal on the grounds that there had been no finding that the failure was wilful or that prejudice had resulted to the defendant. Neither had there been a demonstration that the information sought by the interrogatories could have been such as to require a judgment for defendant.

 Application of the general rule, in view of the cases discussed above, requires the conclusion that respondent abused its discretion in compelling full production of all the disputed documents due to the slight delay in full compliance. The sanctions imposed were excessive in that they are not reasonably calculated to achieve the purpose of effecting compliance with discovery and are punitive in nature. If the compelled "waiver" was intended as part of the sanction, it too was excessive.

Plaintiffs provided a detailed 17-page list and description of the 108 documents less than 24 hours beyond the extended deadline. Personal verifi-

cation as to the descriptions of 70 of the documents was then supplied by the accompanying declaration of Lee Young, Jr., and the descriptions of the remaining 38 documents were informally supported by the unverified declaration of Ralph Seltzer. By the date of the April 12 hearing, the March 7 order had been fully complied with in substance. Neither the referee's tentative findings nor the additional findings of the trial court reflect that the showing offered by plaintiffs in their April 1 descriptions was insufficient or incompetent or that its contents were prepared in bad faith.

 In lieu of citing case authority demonstrating that plaintiffs' late compliance warrants severe sanctions, defendant directs her argument to the contention that plaintiffs were actually being punished for their history of delay and avoidance in fulfilling their discovery duties and that these prior acts must be taken into account in reviewing the appropriateness of the sanctions imposed.

However, plaintiffs' two prior insufficient factual showings, in support of their privilege claim, have already been the bases of awards of monetary sanctions. Plaintiffs' April 1, 1983, showing was not sanctioned for its insufficient content but for its lateness. That lateness caused no significant prejudice to defendant. Neither should plaintiffs' failure to comply satisfactorily with earlier requests for further answers to written interrogatories be the basis for increasing sanctions inappropriate to their minimal lateness in offering proof of privilege. Other sanctions have been imposed by respondent for plaintiffs' other discovery disobediences.

The referee's tentative findings, which were adopted by respondent, do not cite any other misconduct by plaintiffs in connection with the finding of late compliance with the March 31, 1983, deadline or the recommendation of the challenged sanction. We need not assume that the referee or respondent determined the appropriateness of the sanction imposed on the general basis of plaintiffs' delinquency with regard to other discovery duties.

We need not address at this time defendant's contention that three of the subject documents inadvertently disclosed by plaintiffs show bad faith because they do not comport with plaintiffs' April 1 description. Whether plaintiffs' descriptions of the subject documents are inaccurate or were prepared in bad faith, and whether the facts stated support the claimed privilege, are questions to be determined upon respondent's evaluation of the 108 descriptions. At such time, these issues and the question of whether Lee Young, Jr., was functioning as an attorney or as an executive officer of plaintiff Motown from 1976 to 1981, may be determined. (Cf. *Watt Industries, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 802 [171

Cal.Rptr. 503]; *Rumac, Inc.* v. *Bottomley* (1983) 143 Cal.App.3d 810 [192 Cal.Rptr. 104].)

Defendant will have an adequate remedy by sanctions if plaintiffs' present showing as to privilege is determined by respondent to have been prepared in bad faith. (See Code Civ. Proc., §§ 128.5; 2034, subd. (b).)

## II

■ Plaintiffs' late compliance does not constitute a waiver of the privilege claimed. Even if the referee's finding of waiver is intended to be simply a determination of waiver by conduct, rather than the result of any sanction, the ruling cannot stand.

In California privileges are created by statute (Evid. Code, § 911) and the means by which privilege may be waived are also controlled by statute (Evid. Code, § 912). (Cf. Evid. Code, § 996 and *City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418]; and *Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825, 828-830 [134 Cal.Rptr. 130], concerning special rule that placing a patient's medical condition at issue in litigation effects a waiver of the physician/patient privilege concerning that condition.)

The exclusive means by which the attorney/client privilege may be waived are specified in section 912 of the Evidence Code. These are (1) when the holder of the privilege, without coercion, and in a nonconfidential context, discloses a significant part of the communication or consents to such disclosure by anyone, and (2) when there is a failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to do so.

In the underlying action neither of these events has occurred as to the attorney/client privilege. Plaintiffs timely claimed that privilege. Their initial dereliction was in their failure to present a competent and sufficiently specific factual description of documents substantiating such claim. Plaintiffs' final one-day delinquency in service of a detailed and facially competent showing may not be equated with a total failure to claim the privilege or with a wilfull total refusal, or delay tantamount to total refusal, to provide a competent description of the documents from which a judicial evaluation of the claim may be made.

Let a peremptory writ of mandate issue directing respondent to amend and modify its order of November 15, 1983, in Los Angeles Superior Court case No. C 420886, entitled Motown Record Corporation et al. v. Tina

Marie Brockert et al., to vacate that portion of that order finding a blanket waiver of privilege as to documents and ordering production of all 108 disputed documents without a prior determination as to the existence of a valid claim of privilege, and to proceed according to law.

Kingsley, J., and McClosky, J., concurred.