[No. B031583. Second Dist., Div. Three. June 22, 1988.]

BLUE RIDGE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
HAROLD KIPPEN et al., Real Parties in Interest.

340

COUNSEL

Breidenbach, Swainston, Crispo & Way, Howard L. Halm and Arturo T. Salinas for Petitioner.

No appearance for Respondent.

Harold Kippen, in pro. per., and John Hanrahan for Real Parties in Interest.

OPINION

KLEIN, P. J.—Petitioner Blue Ridge Insurance Company (Blue Ridge) sought a writ of prohibition and/or mandate directing respondent Superior Court of Los Angeles County to vacate its order requiring Blue Ridge to produce certain documents. The petition was denied. The Supreme Court thereafter granted Blue Ridge's petition for review, and transferred the matter back to this court with directions to issue an alternative writ. We comply.

After reconsideration, we conclude that by filing a timely but unverified response to a request for production of documents, Blue Ridge did not waive its asserted privilege objections as the objections do not require a verification in order to be preserved. We therefore issue a peremptory writ.

FACTUAL AND PROCEDURAL BACKGROUND

In December 1985, real parties in interest Harold Kippen and Frances C. Kippen (Kippens) submitted a claim to Blue Ridge under their homeowner policy for property damage caused by settling, cracking and separation of portions of their Tarzana home and rear yard improvements. On November 19, 1986, the Kippens filed suit against Blue Ridge for bad faith, breach of statutory duties, and fraud. On May 5, 1987, Blue Ridge was served with a request for production and identification of documents. (Code Civ. Proc., § 2031.)[1]

The Kippens granted Blue Ridge an extension until July 1, 1987, to respond. On July 1, 1987, Blue Ridge served a timely but unverified response to the request for production. Blue Ridge asserted the attorney/client and work product privileges with respect to three of the four categories of documents requested, and indicated it would produce those items to the extent they were not privileged. As for the remaining category, Blue Ridge agreed to full production.

On July 7, 1987, the Kippens wrote Blue Ridge stating that because Blue Ridge's response was unverified, Blue Ridge's objections on the grounds of

---

[1] All subsequent statutory references are to Code of Civil Procedure, unless otherwise indicated.

privilege were not timely, entitling the Kippens to receive all the requested files without objection. After Blue Ridge declined to provide the documents it maintained were privileged, on July 30, 1987, the Kippens filed a motion to compel their production.

On August 4, 1987, Blue Ridge produced the documents it considered nonprivileged. On August 12, 1987, Blue Ridge served the Kippens with a verification to its response of July 1, 1987. On October 2, 1987, Blue Ridge identified the 14 documents not being produced on privilege grounds.

The Kippens' motion to compel was heard October 13, 1987. Counsel for Blue Ridge filed its opposition one day late due to its misapprehension in counting Columbus Day as a court day, and the trial court declined to consider Blue Ridge's papers.[2] Following argument in the matter, the trial court ruled Blue Ridge's failure to provide a verification at the time of service of its response to the discovery request was tantamount to a failure to respond. Relying on section 2031, subdivision (k), the trial court held a failure to respond to a request for production constitutes a waiver of objections, including those based on the attorney/client and work product privileges. Blue Ridge was ordered to produce all documents within 20 days without objection, and sanctions were granted in the amount of $164.

On October 23, 1987, Blue Ridge filed a motion for: (1) reconsideration of the order granting the motion to compel (§ 1008); (2) an order granting relief from default in failing to file timely opposition to the motion to compel (§ 473); and (3) relief from default in failing to serve a timely verification. The matter was heard December 4, 1987, and the relief sought was denied. Blue Ridge was ordered to produce all documents without objection within 10 days, and to pay the Kippens sanctions in the sum of $350.

On December 14, 1987, Blue Ridge filed a petition for writ of mandate and/or prohibition. The writ was denied on December 23, 1987. On January 4, 1988, Blue Ridge filed a petition for review in the Supreme Court, which court issued a stay two days later. On March 3, 1988, the petition for review was granted, and the matter was transferred back to this court with directions to issue an alternative writ. The order granting review made reference to *Brown* v. *Superior Court* (1986) 180 Cal.App.3d 701 [226 Cal.Rptr. 10] and *Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482 [202 Cal.Rptr. 227].

CONTENTIONS

Blue Ridge contends: (1) former section 2031 is applicable and does not provide for a waiver of objections based on the failure to serve a timely

---

[2] California Rules of Court, rule 317(a), requires opposing papers to be served and filed at least five court days before the time appointed for the hearing.

response; (2) in any event, such objections need not be verified as they are interposed by counsel, not by the party; (3) timely asserted objections followed by a late verification do not constitute a waiver of the attorney/client or work product privileges; and (4) the policy behind the attorney/client and work product privileges is strongly against a waiver due to a mere technicality.

## DISCUSSION

### 1. *Trial court erred in invoking amended section 2031.*

As indicated, the trial court, in finding a waiver, relied on section 2031, subdivision (k), operative July 1, 1987.

Said section provides in relevant part: "If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product . . . . However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance . . . , and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect."

Section 20 of Statutes 1987, chapter 86, page 61, provides in relevant part: "The Civil Discovery Act of 1986 shall become operative on July 1, 1987. This act shall govern all discovery proceedings in actions filed on or after that date. It shall also govern discovery proceedings in actions then pending, except that (a) any particular use of a discovery method that was initiated before July 1, 1987, shall continue to be governed by the provisions of law regulating that method at the time it was initiated, . . ."

■ As set forth *ante,* the Kippens served Blue Ridge with the request for production on May 5, 1987. Because this particular use of a discovery method was initiated before July 1, 1987, the trial court improperly invoked the amended statute to find a waiver.[3]

Former section 2031 did not contain a comparable waiver provision. Subdivision (b) thereof merely provided in relevant part: "The party submitting the request may move for an order for compliance under subdivision (a) of Section 2034 with respect to any objection to or failure to respond to the request or any part thereof, or to any failure to permit

---

[3] Even assuming that under the new law Blue Ridge waived its objections, relief may have been appropriate pursuant to the second sentence of section 2031, subdivision (k), by motion to the court.

inspection as requested." Former section 2034 likewise did not deem the privileges waived. Accordingly under the applicable statutes, Blue Ridge's omission did not give rise to a waiver.

## 2. *Objections to request for production not required to be verified.*

■ Blue Ridge urged below and again in its petition that counsel's legal objections to the production request need not be verified, and therefore its unverified response did not waive the asserted objections. The contention has merit.

Former section 2031, subdivision (b), the controlling statute here, provided in relevant part: "The party upon whom the request is served shall serve a written response subscribed under oath by such party, . . . If objection is made to part of an item or category, the part shall be specified." While less than clear, the statute does not appear to require that objections be verified in order to be preserved.[4, 5]

The absence of a requirement that objections be verified was continued and clarified in the new law. Present section 2031 provides at subdivision (g): "The party to whom the demand for inspection is directed shall sign the response under oath unless the response contains only objections."[6]

Blue Ridge's response did not consist solely of objections, but was a "hybrid" of objections and other statements. However, those other statements are not in issue, and Blue Ridge delivered to the Kippens all documents which it considered nonprivileged. The provision that a response consisting solely of objections need not be verified confirms that an objection in an unverified "hybrid" response is nonetheless effective. The verification requirement for a response which contains matter other than objections operates to support the *other* statements in the response. The objections themselves do not require a verification in order to be preserved.

---

[4]*Schaff* v. *Superior Court* (1983) 146 Cal.App.3d 921, 924 [194 Cal.Rptr. 546], paraphrasing the statute, stated: "Section 2031, subdivision (b) requires a verified written response to a request for production of documents stating any objections to such request . . . ." The Kippens' reliance thereon is unavailing, as *Schaff* does not discuss the validity of objections asserted in an unverified response.

[5]By contrast, former section 2033, pertaining to requests for *admission,* is more explicit in this regard. Section 2033, subdivision (a), provided in part: "Each of the matters of which an admission is requested shall be deemed admitted, . . . , unless, . . . , the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why the party cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper . . . ."

[6]Similarly, responses to interrogatories and to requests for admission need not be verified where the responses consist solely of objections. (§§ 2030, subd. (g), 2033, subd. (g).)

Although both former and present section 2031 require that a response be verified, we conclude that under both versions *objections* to a production request are effective even though the response is unverified. The statutes reflect the recognition that objections are legal conclusions interposed by counsel, not factual assertions by a party, making their verification unnecessary.

Blue Ridge timely responded on July 1, 1987, to the request for production, at which time it objected on the grounds of privilege. The fact that the response was unverified was without import with respect to the objections raised therein. Because the response was timely filed, Blue Ridge did not waive its legal objections to the production request.

3. *Notwithstanding civil discovery statutes, Evidence Code governs waiver of attorney/client privilege.*

■ The privilege afforded the client's communications to counsel is the oldest of the confidential communication privileges. (*Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 71 [105 Cal.Rptr. 241].) Our Supreme Court has stated the privilege "is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." (*City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]; accord *People* v. *Canfield* (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633].) The privilege is an important right given to protect a relationship that must be "sedulously fostered" (*Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90, 96 [146 Cal.Rptr. 171], disagreed with on other grounds in *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 63-64 [166 Cal.Rptr. 274]), and has even been referred to as "sacred." (See e.g. *Sullivan* v. *Superior Court, supra,* at p. 71; *People* v. *Flores* (1977) 71 Cal.App.3d 559, 565 [139 Cal.Rptr. 546].) "It is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege." (*People* v. *Kor* (1954) 129 Cal.App.2d 436, 447 [277 P.2d 94], conc. opn. of Shinn, P. J.)

In *Motown Record Corp.* v. *Superior Court, supra,* 155 Cal.App.3d at pages 484-488, the plaintiffs did not provide a factual basis for their claims that certain documents were protected from discovery by the attorney/client and work product privileges until one day beyond the deadline to comply with a trial court order requiring the showing. Pursuant to former section 2034, the trial court imposed the sanction of compelling full production and ruled any existing privilege was waived.

*Motown* held the trial court abused its discretion in compelling full production due to the slight delay in compliance, as the sanctions imposed

"were excessive in that they [were] not reasonably calculated to achieve the purpose of effecting compliance with discovery and [were] punitive in nature." (*Id.,* at p. 490.)

*Motown* further held the plaintiffs' late compliance did not constitute a waiver of the claimed privilege because the creation and waiver of privileges are controlled by statute. (*Id.,* at p. 492.) "The exclusive means by which the attorney/client privilege may be waived are specified in section 912 of the Evidence Code. These are (1) when the holder of the privilege, without coercion, and in a nonconfidential context, discloses a significant part of the communication or consents to such disclosure by anyone, and (2) when there is a failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to do so." (*Ibid.*)

*Motown* concluded: "In the underlying action neither of these events has occurred as to the attorney/client privilege. Plaintiffs *timely* claimed that privilege. Their initial dereliction was in their failure to present a competent and sufficiently specific factual description of documents substantiating such claim. Plaintiffs' final one-day delinquency in service of a detailed and facially competent showing may not be equated with a total failure to claim the privilege or with a wilfull [*sic*] total refusal, or delay tantamount to total refusal, to provide a competent description of the documents from which a judicial evaluation of the claim may be made." (*Ibid.,* italics added.)[7]

*Brown* v. *Superior Court, supra,* 180 Cal.App.3d at pages 704-705, considered whether civil defendants in an action for assault and battery and conspiracy to murder waive the right to assert the Fifth Amendment privilege against self-incrimination by failing to timely raise same.

After the defendants failed to respond to interrogatories served January 11, 1985, the plaintiff moved to compel answers, and on April 19, 1985, the trial court ordered the interrogatories to be answered within 30 days without objection. The defendants ignored the April 19 order. The plaintiff then moved to strike defendants' answer and for a default judgment, or in the alternative, that the matters embraced by the discovery order be taken as established. The defendants filed no opposition. On July 19, 1985, the trial court granted the motion unless answers were filed within 10 days of notice. In response 11 days later, the defendants filed written objections to the interrogatories, asserting the Fifth Amendment privilege as to all questions. (*Brown* v. *Superior Court, supra,* 180 Cal.App.3d at p. 705.)

*Brown* held the defendants' failure to assert the privilege as an objection to the interrogatories within the 30-day period after service as prescribed by

---

[7] *Motown* was disagreed with on other grounds in *Puritan Ins. Co.* v. *Superior Court* (1985) 171 Cal.App.3d 877, 883-884 [217 Cal.Rptr. 602].)

the code constituted a waiver. The defendants' reliance on *Motown* was held unavailing because in *Motown* there was a timely claim of privilege and merely a delay in providing an adequate showing in support of the claim. (*Brown* v. *Superior Court, supra,* 180 Cal.App.3d at pp. 710-711.) Contrarily, the *Brown* defendants failed to claim the privilege when they had the legal standing and opportunity to do so, i.e., within the 30-day period provided by section 2030. (*Id.,* at p. 711.)

■ Accordingly, where there is a timely assertion of the attorney/client privilege, putting the other side on notice, a forced waiver for some technical shortfall is at odds with Evidence Code section 912 and is an excessive sanction not reasonably calculated to achieve the purpose of effecting compliance with discovery.[8]

### DISPOSITION

The alternative writ is discharged, having served its purpose. Let a peremptory writ of mandate issue directing respondent to vacate its orders of October 13, 1987, and December 4, 1987, which found a blanket waiver of privilege and ordered production of all documents without a prior determination as to the existence of a valid claim of privilege, and which imposed a total of $514 in sanctions, and to proceed according to law.

Each party to bear respective costs on appeal.

Danielson, J., and Croskey, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied September 28, 1988.

---

[8]As noted, Blue Ridge interposed objections on the grounds of both the attorney/client and work product privileges. Under the statute, objections on any basis do not fail for lack of verification. However, with respect to the balancing of the civil discovery statutes and the Evidence Code, the discussion in *Motown* and here is limited to the attorney/client privilege.