Filed 12/4/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CATALINA ISLAND YACHT CLUB et al., | |
| Petitioners, | |
| v. | G052062 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2013-00679575) |
| Respondent; | O P I N I O N |
| TIMOTHY BEATTY et al., | |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Kirk H. Nakamura, Judge. Petition granted.

Schumann │ Rosenberg, Kim Schumann, Jeffrey P. Cunningham and Marlys K. Braun for Petitioners.

No appearance for Respondent.

Fox Johns Lazar Pekin & Wexler and George C. Lazar for Real Parties in Interest.

*        *        *

May a trial court find a waiver of the attorney-client privilege and work product doctrine when the objecting party submits an inadequate privilege log that fails to provide sufficient information to evaluate the merits of the objections?  No.

When confronted with a deficient privilege log that fails to provide the necessary information to rule on attorney-client and work product objections, a trial court may order the responding party to provide a further privilege log that includes the necessary information to rule on those objections, but may not order the privileges waived based on deficiencies in the privilege log because serving a deficient privilege log, or even failing to serve a privilege log, is not one of the three statutorily-authorized methods for waiving the attorney-client privilege.  The court may impose monetary sanctions for providing a deficient privilege log, and it may impose evidence, issue, and even terminating sanctions if the responding party persists in its failure to provide the court with the information necessary to rule on the objections' merits, but a forced waiver is not authorized by either the statutory scheme establishing the attorney-client privilege or the discovery statutes once the responding party preserves the objections by timely asserting them in response to an inspection demand.

Here, the trial court ordered petitioners to produce 167 e-mails identified on their privilege log because the log failed to describe the subject matter or content of the e-mails, and therefore failed to show the e-mails were protected by either the attorney-client privilege or attorney work product doctrine.  We conclude the trial court erred because it exceeded its authority.

Real parties in interest contend the court did not order the e-mails produced based on a waiver of the attorney-client privilege or work product doctrine.  Rather, they argue the court based its ruling on petitioners' failure to meet their burden to establish the

2

e-mails were privileged.  This contention, however, misconstrues the basis for the court's ruling and the controlling law.  The court ordered the e-mails produced because petitioners' privilege log failed to provide the information necessary to determine whether the e-mails were privileged; the court did not conclude that the e-mails were not privileged.  As explained above, when a privilege log fails to provide a trial court with sufficient information to rule on the merits of a privilege objection, the only relief the court may grant – other than sanctions – is an order requiring a further privilege log that provides the necessary information.

I

FACTS AND PROCEDURAL HISTORY

Petitioner Catalina Island Yacht Club (Yacht Club) is located in the City of Avalon on Catalina Island.  It hosts social events for its members and also arranges for its members to dock their boats in Avalon Harbor.  Real party in interest Timothy Beatty and petitioners Charles Boppell, V. Kelley York, Lowell Dreyfus, Tom Nix, and Dave Horst were members of the Yacht Club and its board of directors.[1]  In 2013, Beatty sued Petitioners, alleging they conspired to remove him from the board and suspend his membership in the Yacht Club.  He alleges Petitioners defamed him by telling others that the Yacht Club removed him because he committed various acts that prejudiced "the best interests of the Club."  The operative first amended complaint alleges claims for libel, slander, invasion of privacy, and intentional infliction of emotional distress.[2]

---

[1]    we will refer to petitioners Catalina Island Yacht Club, Charles Boppell, V. Kelley York, Lowell Dreyfus, Tom Nix, and Dave Horst collectively as Petitioners.

[2]    The first amended complaint also alleges a claim on behalf of real party in interest Beatty & Company Computing, Inc. for the reasonable value of services performed.  This claim alleges Beatty, through Beatty & Company Computing, Inc., installed a computerized accounting system and completely reorganized the Yacht Club's accounting system, but the Yacht Club failed to pay for the services.  This claim is not relevant to the discovery dispute at issue in these proceedings.

3

In December 2013, Beatty served inspection demands on Petitioners seeking written communications and other documents relating to his removal from the Yacht Club's board of directors and suspension of his membership. In early February 2014, Petitioners served written responses that included boilerplate objections based on the attorney-client privilege and work product doctrine. Nearly two months later, Petitioners served a privilege log identifying 17 "communications" they withheld from production based on the attorney-client privilege and work product doctrine. For each communication, the log simply provided the date of the communication and explained it was between "counsel for Defendants and Defendants."

Beatty filed a motion to compel Petitioners to produce the communications identified on the privilege log because the log failed to provide sufficient information to invoke the attorney-client privilege or work product doctrine. The court, however, ordered the parties to meet with a temporary judge and attempt to resolve the issue and several other pending discovery motions. In August 2014, the parties reported to the court they had reached an agreement regarding the discovery issues. On Beatty's motion to compel production, Petitioners agreed to supplement their privilege log to identify the sender and the recipients of each communication, but the parties' agreement said nothing about describing the content or subject matter of the communications.

In September 2014, Petitioners served a supplemental privilege log identifying the communications as e-mails and the sender and all recipients of each e-mail. The supplemental log also increased the number of withheld documents from 17 to 36. Beatty responded with a motion for sanctions, claiming Petitioners had failed to comply with the agreement the parties reached because Petitioner had not produced all the requested documents.

In January 2015, just before the hearing on Beatty's sanctions motion, Petitioners served another supplemental privilege log purporting to identify the sender and all recipients of each e-mail and the date of the communication. It also significantly

increased the number of e-mails Petitioners were withholding from production. The parties fail to state whether or how the trial court ruled on Beatty's sanctions motion.

In March 2015, Beatty served a motion to compel Petitioners to produce 167 e-mails identified in the most recent privilege log. He argued Petitioners waived the attorney-client privilege and work product doctrine by failing to timely serve a privilege log that provided sufficient factual information to enable him to evaluate the merits of Petitioners' privilege objections. Beatty also argued the court should order Petitioners to produce the e-mails because Petitioners failed to present sufficient evidence to establish the e-mails were confidential attorney-client communications or work product. In opposing the motion, Petitioners argued the trial court lacked authority to order the e-mails produced based on any purported deficiency in their privilege log because that ruling would amount to a forced waiver of the attorney-client privilege and work product doctrine. Instead, Petitioners offered to provide another supplemental privilege log or produce the e-mails for in-camera review if the court found the privilege log deficient.

On May 14, 2015, the trial court granted Beatty's motion and ordered Petitioners to produce the 167 e-mails within 10 days and to pay $1,140 in monetary sanctions. The court explained, "Although not untimely, the information supplied by the privilege log produced by [Petitioners] is insufficient to show the entries therein are protected by either the attorney-client or work product protections. [Petitioners] have not offered any description of the allegedly protected e-mails in the privilege log or otherwise. Even a minimal statement such as 'transmission of strategic documents/pleadings including analysis and legal assessment' . . . is sufficient. *Bank of America, N.A. v. Superior Court of Orange County* (2013) 212 CA4th 1076 [(*Bank of America*)]. Here, there is no identification whatsoever as to why the subject emails may be protected from disclosure."

Petitioners then filed this writ petition seeking to stay the trial court's May 14, 2015 order and a writ of mandate compelling the court to vacate that order. We

5

granted an immediate stay and invited preliminary opposition from Beatty. After reviewing that opposition, we extended the stay and issued an order to show cause why a writ of mandate should not issue ordering the court to vacate its May 14, 2015 order compelling Petitioners to produce the e-mails. Beatty filed a return to the petition and Petitioners filed a reply.

II

DISCUSSION

A.      *Availability of Extraordinary Writ Review and the Governing Standard of Review*

"'Interlocutory review by writ is the only adequate remedy where a court orders production of documents which may be subject to a privilege, "since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure." [Citation.] The attorney-client privilege "deserves a particularly high degree of protection in this regard since it is a legislatively created privilege protecting important public policy interests, particularly the confidential relationship of attorney and client and their freedom to discuss matters in confidence."'" (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 (*Lockyer*).)

We review discovery orders for abuse of discretion. (*Bank of America*, *supra*, 212 Cal.App.4th at p. 1089.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*Ibid*.)

"'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action. . . .' Action that transgresses the confines of the applicable principles of law is outside the

6

scope of discretion and we call such action an 'abuse' of discretion."' [Citation.] [¶] '[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion.'" (*Bank of America*, *supra*, 212 Cal.App.4th at p. 1089.)

B.    *Governing Legal Principles on Inspection Demands and Objections Based on the Attorney-Client Privilege and Work Product Doctrine*

Any party to an action may serve a written demand that another party permit inspection and copying of documents, electronically stored information, or other tangible things in the responding party's possession, custody, or control. (Code Civ. Proc., § 2031.010.)[3]  Within 30 days, the responding party must serve a written response to the demand that separately responds to each category of documents or other things the demand seeks with (1) a statement the responding party will comply with the particular demand; (2) a representation that the party lacks the ability to comply; or (3) "[a]n objection to the particular demand."  (§§ 2031.210, subd. (a); 2031.260.)

If the responding party objects to a demand, the party must (1) "[i]dentify with particularity any document, tangible thing, land, or electronically stored information falling within any category of item in the demand to which an objection is being made"; and (2) "[s]et forth clearly the extent of, and the specific ground for, the objection.  If an objection is based on a claim of privilege, the particular privilege invoked shall be stated." (§ 2031.240, subd. (b).)  The failure to timely respond to an inspection demand waives all objections to the demand, including objections based on privilege (§ 2031.300, subd. (a)), and the failure to assert a specific objection waives that particular objection (*Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130, 1141).

Privilege logs have long been used by practitioners to list and describe the items to be protected.  But the expression "'privilege log'" appeared nowhere in the Code of Civil Procedure, rather it was merely "jargon, commonly used by courts and attorneys

_____

[3]    All statutory references are to the Code of Civil Procedure unless stated.

7

to express the requirements of [section 2031.240, subdivision (b)]." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 292 (*Hernandez*); see *Lockyer*, *supra*, 122 Cal.App.4th at pp. 1073-1074; *Best Products, Inc. v. Superior Court* (2004) 119 Cal.App.4th 1181, 1188-1189 (*Best Products*).) "'The purpose of a "privilege log" is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production. [Citation.] The purpose of providing a specific factual description of documents is to permit a judicial evaluation of the claim of privilege.'" (*Ibid*.)

In 2012, the Legislature amended section 2031.240 "to codify the concept of a privilege log as that term is used in California case law." (§ 2031.240, subd. (c)(2).) The new section 2031.240, subdivision (c)(1), provides, "If an objection is based on a claim of privilege or a claim that the information sought is protected work product, the response shall provide sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log." In adding this subdivision, the Legislature declared, "Nothing in this subdivision shall be construed to constitute a substantive change in case law." (§ 2031.240, subd. (c)(2).)

The attorney-client privilege "'has been a hallmark of Anglo-American jurisprudence for almost 400 years.' [Citation.] Its fundamental purpose 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. . . . "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." [Citations.]' [Citation.] '[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' [Citation.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732 (*Costco*).) "'[The privilege] is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts

8

seize upon slight and equivocal circumstances as a technical reason for destroying the privilege.' [Citation.]" (*Blue Ridge Ins. Co. v. Superior Court* (1988) 202 Cal.App.3d 339, 345 (*Blue Ridge*).)

The case law therefore recognizes only three methods for waiving the attorney-client privilege: (1) disclosing a privileged communication in a nonconfidential context (Evid. Code, § 912, subd. (a)); (2) failing to claim the privilege in a proceeding in which the holder has the legal standing and opportunity to do so (*ibid*.); and (3) failing to assert the privilege in a timely response to an inspection demand (§ 2031.300, subd. (a)). (See, e.g., *Lockyer*, *supra*, 122 Cal.App.4th at p. 1073; *Best Products*, *supra*, 119 Cal.App.4th at p. 1188; *Korea Data Systems Co. v. Superior Court* (1997) 51 Cal.App.4th 1513, 1516-1517 (*Korea Data*).) Failing to serve a privilege log or serving an inadequate privilege log does not fall into any of these three methods. (*Lockyer*, at p. 1074; *Best Products*, at p. 1189; *Korea Data*, at pp. 1516-1517.)

Accordingly, if a party responding to an inspection demand timely serves a response asserting an objection based on the attorney-client privilege or work product doctrine, the trial court lacks authority to order the objection waived even if the responding party fails to serve a privilege log, serves an untimely privilege log, or serves a privilege log that fails either to adequately identify the documents to which the objection purportedly applies or provide sufficient factual information for the propounding party to evaluate the objection. (*Lockyer*, *supra*, 122 Cal.App.4th at pp. 1074-1075 ["Because the [responding parties] timely objected on the grounds of privilege, they preserved these objections, regardless of whether the objections were sufficiently detailed in their response or privilege log and the court, as a matter of law, could not find that they had waived these privileges"]; *Best Products*, *supra*, 119 Cal.App.4th at pp. 1187-1189; *Hernandez*, *supra*, 112 Cal.App.4th at p. 294; *Korea Data*, *supra*, 51 Cal.App.4th at pp. 1516-1517; *Blue Ridge*, *supra*, 202 Cal.App.3d at p. 347 ["where there is a timely assertion of the attorney/client privilege, putting the other

9

side on notice, a forced waiver for some technical shortfall is at odds with Evidence Code section 912 and is an excessive sanction not reasonably calculated to achieve the purpose of effecting compliance with discovery"].)

The propounding party's remedy when it deems "[a]n objection in the response is without merit or too general" is to "move for an order compelling further response."[4] (§ 2031.310, subd. (a)(3); see *Lockyer*, *supra*, 122 Cal.App.4th at p. 1075; *Best Products*, *supra*, 119 Cal.App.4th at p. 1189.) If the response and any privilege log provide sufficient information to permit the court to determine whether the asserted privilege protects specific documents from disclosure, the court may rule on the merits of the objection by either sustaining it or overruling it as to each document. (*Kaiser Foundation Hospitals v. Superior Court* (1998) 66 Cal.App.4th 1217, 1228-1229 (*Kaiser Foundation*).)

If the response and any privilege log fail to provide sufficient information to allow the trial court to rule on the merits, the court may order the responding party to provide a further response by serving a privilege log or, if one already has been served, a supplemental privilege log that adequately identifies each document the responding party claims is privileged and the factual basis for the privilege claim. (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1075; *Kaiser Foundation*, *supra*, 66 Cal.App.4th at pp. 1228-1229.) In ordering a further response, the court also may impose monetary sanctions on the responding party if that party lacked substantial justification for providing its deficient response or privilege log. (§ 2031.310, subd. (h).)

---

[4] The Code of Civil Procedure authorizes two other types of motion to compel compliance with an inspection demand. First, if the responding party fails to respond at all, the propounding party may move for an order compelling a response. (§ 2031.300.) Second, if the responding party serves a response stating the party will permit inspection, but then fails to do so, the propounding party may move for an order compelling the responding party to permit inspection in compliance with its response. (§ 2031.320.)

10

If the responding party thereafter fails to adequately comply with the court's order and provide the information necessary for the court to rule on the privilege objections, the propounding party may bring another motion seeking a further response or a motion for sanctions. At that stage, the sanctions available include evidence, issue, and even terminating sanctions, in addition to further monetary sanctions. (§ 2031.310, subd. (i).) But the court may not impose a waiver of the attorney-client privilege or work product doctrine as a sanction for failing to provide an adequate response to an inspection demand or an adequate privilege log. (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1075; *Best Products*, *supra*, 119 Cal.App.4th at p. 1189 ["the statute does *not* include as an authorized sanction a judicial order that a privilege has been waived"]; *Hernandez*, *supra*, 112 Cal.App.4th at p. 294; *Korea Data*, *supra*, 51 Cal.App.4th at p. 1517; *Blue Ridge*, *supra*, 202 Cal.App.3d at p. 347.)

In *Lockyer*, for example, the responding party's response to an inspection demand timely asserted objections based on the attorney-client privilege and work product doctrine, but did not serve a privilege log or otherwise identify the purportedly privileged documents or the factual basis for the privilege claims. The responding party later served a privilege log that identified categories of documents that were allegedly privileged, but did not identify specific documents. (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1066.) The propounding party then moved to compel production of the documents that had not been identified on the privilege log with particularity. The trial court overruled the privilege claims and ordered the responding party to produce the documents that were not specifically identified on the log. (*Id*. at pp. 1068-1070.)

The Court of Appeal granted the responding party's petition for a writ of mandate compelling the trial court to vacate its order overruling the objections. (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1081.) The *Lockyer* court explained that the responding party had preserved its objections based on the attorney-client privilege and work product doctrine by timely asserting them in the original response to the inspection demand, and

therefore the trial court lacked authority "as a matter of law" to overrule the objections based on any deficiencies in the responding party's initial response or privilege log. (*Id.* at pp. 1074-1075.) Instead, the propounding party's remedy was to compel the responding party to provide a more detailed privilege log that identified each document with particularity and to present sufficient factual information to allow the propounding party and the court to evaluate each privilege claim. Even if the responding party failed to adequately comply with an order to provide a more detailed privilege log, the *Lockyer* court emphasized the trial court lacked authority to disregard the privilege objections or find a waiver based on deficiencies in the privilege log. (*Id.* at p. 1075.)

C.    *The Trial Court Erred in Ordering the E-mails Produced Based on Deficiencies in Petitioners' Privilege Log*

Petitioners contend the trial court abused its discretion because it lacked authority to order them to produce the e-mails based on the inadequacies the court found in the privilege log. According to Petitioners, the court's order amounts to a forced waiver of the attorney-client privilege and work product doctrine. We agree.

The court's order does not expressly state Petitioners waived their privilege objections, but the order's plain language establishes the court ordered the e-mails produced based on deficiencies in Petitioners' privilege log rather than a determination the attorney-client privilege and work product doctrine did not apply to the e-mails. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 989 [plain language of court order governs if it is clear and explicit].) The order states, "[T]he information supplied by the privilege log produced by [Petitioners] is insufficient to show the entries therein are protected by either the attorney-client or work product protections." The order goes on to explain Petitioners' log failed to describe the subject matter of the e-mails and therefore the court could not determine whether the e-mails were privileged.

As explained above, a responding party preserves its objections based on the attorney-client privilege and work product doctrine by serving a timely written

12

response asserting those objections. It is irrelevant that the objections are asserted as part of a generic or boilerplate response, or that the responding party failed to serve a timely and proper privilege log. Once the objections are timely asserted, the trial court may not deem them waived based on any deficiency in the response or privilege log. (*Lockyer*, *supra*, 122 Cal.App.4th at pp. 1074-1075; *Best Products*, *supra*, 119 Cal.App.4th at pp. 1188-1189; *Hernandez*, *supra*, 112 Cal.App.4th at p. 294; *Korea Data*, *supra*, 51 Cal.App.4th at pp. 1516-1517; *Blue Ridge*, *supra*, 202 Cal.App.3d at p. 347.) Nor may the court overrule the objections unless it receives sufficient information to decide whether they have merit. (*Lockyer*, at pp. 1074-1075; *Kaiser Foundation*, *supra*, 66 Cal.App.4th at pp. 1228-1229; *Korea Data*, at pp. 1515, 1517.) Instead, the court is limited to ordering further responses and imposing sanctions if the responding party acted without substantial justification in providing a deficient response or privilege log. (*Lockyer*, at p. 1075; *Best Products*, at p. 1189; *Korea Data*, at p. 1517.)

Here, it is undisputed Petitioners timely served written responses to Beatty's inspection demands that included boilerplate objections based on the attorney-client privilege and work product doctrine. Accordingly, Petitioners preserved those objections and the trial court lacked authority to order the objections waived or overruled based on deficiencies in either Petitioners' responses or their later privilege logs. Nonetheless, the court ordered Petitioners to produce 167 e-mails identified in the most recent privilege log because the information in the log was insufficient. Although we agree Petitioners' privilege log is deficient because it fails to provide sufficient information to allow Beatty and the court to determine whether the e-mails are protected,[5]

---

[5] For example, we agree with the court's conclusion the privilege log is deficient because it fails to provide any description of the documents or their contents other than to state they are e-mails. That is not sufficient to allow a determination whether the documents are privileged. Even assuming all of the documents were communications with an attorney, not all communications with an attorney are privileged. Instead, the attorney-client privilege attaches only to confidential communication made in the course of or for the purposes of facilitating the

13

the foregoing authorities demonstrate the court exceeded its authority and therefore abused its discretion by ordering Petitioners to produce the e-mails.

Instead of ordering Petitioners to produce the e-mails, the trial court should have ordered Petitioners to provide a supplemental privilege log. (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1075; *Kaiser Foundation*, *supra*, 66 Cal.App.4th at pp. 1228-1229.) A privilege log must identify with particularity each document the responding party claims is protected from disclosure by a privilege and provide sufficient factual information for the propounding party and court to evaluate whether the claim has merit. (§ 2031.240, subds. (b) & (c); *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 130.) The precise information required for an adequate privilege log will vary from case to case based on the privileges asserted and the underlying circumstances. In general, however, a privilege log typically should provide the identity and capacity of all individuals who authored, sent, or received each allegedly privileged document, the document's date, a brief description of the document and its contents or subject matter sufficient to determine whether the privilege applies, and the precise privilege or protection asserted. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 8:1474.5, p. 8H-27; *Bank of America*, *supra*, 212 Cal.App.4th at p. 1100; *Friends of Hope Valley v. Frederick Co.* (E.D. Cal. 2010) 268 F.R.D. 643, 650-651.)

Beatty contends the trial court did not rely on a waiver of the attorney-client privilege or work product doctrine in granting his motion. Rather, he argues the court ordered the e-mails produced because Petitioners failed to meet their burden to show the e-mails were privileged. According to Beatty, Petitioners' waiver argument assumes the e-mails are privileged without showing they are. To support this

attorney-client relationship. (Evid. Code, § 952; *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 116-117.) We express no opinion on whether Petitioners' privilege log is deficient for any additional reasons.

14

contention, Beatty cites cases stating the general proposition that "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." (*Costco*, *supra*, 47 Cal.4th at p. 733; see *D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729; *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 911.) We do not find the contention persuasive.

Beatty's argument and the cases he cites in support fail to address the issue we confront: whether a trial court may order a party to disclose potentially privileged information because the party's privilege log did not provide sufficient information for the court to evaluate whether the privilege applies. As explained above, the statutory scheme governing inspection demands and the case law applying it prohibit a trial court from ordering a timely invoked privilege objection waived or overruled based on deficiencies in a privilege log. In those circumstances, the remedies available to the court are limited to ordering a further response that provides sufficient information to allow the court to rule on the merits. The court also may impose sanctions, including evidence, issue, and terminating sanctions, if the responding party continues to provide insufficient information. It does not follow that the responding party's failure to meet its burden permits the trial court to find a waiver.

Beatty also contends the 2012 amendment to section 2031.240 authorized the trial court to find Petitioners waived their privilege objections by serving an untimely and deficient privilege log. He acknowledges *Lockyer*, *Best Products*, *Hernandez*, *Korea Data*, and *Blue Ridge* hold that failing to serve an adequate privilege log with the written response does not waive objections based on privilege if the objections were first asserted in a timely written response. According to Beatty, however, the 2012 amendment "supplanted" that rule and now requires that a responding party suffer a waiver unless it has served an adequate privilege log with the written response to the inspection demand. The plain language of the 2012 amendment refutes Beatty's argument: "Nothing in this subdivision shall be construed to constitute a substantive change in case law."

15

(§ 2031.240, subd. (c)(2); *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385 ["'The plain meaning controls if there is no ambiguity in the statutory language'"].)  Requiring a responding party to serve a privilege log at the same time as the written response and authorizing a waiver of privileges based on an untimely or deficient privilege log would produce a substantive change in the law.  Thus, the numerous cases prohibiting a finding of waiver under these circumstances continue to offer authoritative guidance.

Our decision will result in further trial court proceedings to resolve Beatty's discovery demands.  Part of the delay, however, arose from the parties' August 2014 agreement requiring Petitioners to supplement their privilege log by identifying the sender of each e-mail and all recipients, but not the subject matter or content of the e-mails.  That latter omission is the precise shortcoming that prevented the trial court from deciding Petitioners' privilege objections on the merits.

As described above, trial courts have the authority to deter obstructionist behavior by imposing monetary and other sanctions when a responding party acts without substantial justification in providing a deficient response or privilege log.  The appropriate use of these powers should minimize the unwarranted delays on display here.

II

DISPOSITION

The petition for writ of mandate or other appropriate relief is granted.  Let a writ of mandate issue directing the respondent court to vacate its May 14, 2015 order granting Beatty's motion and compelling Petitioners to produce the e-mails, and to issue a new order (1) granting Beatty's motion and compelling Petitioners to serve a supplemental privilege log that identifies each withheld document with particularity and provides sufficient factual information for Beatty and respondent court to evaluate each privilege claim, and (2) awarding Beatty monetary sanctions in an amount to be

16

determined by respondent court.  This court's order staying the May 14, 2015 order is dissolved upon the finality of this opinion.  The parties shall bear their own costs for the proceedings in this court.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.