Filed 8/27/20  Schilders v. DeLacey CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANNEMARIE SCHILDERS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KELLY JOE SHINDELL DELACEY, et al.,<br><br>    Defendants and Respondents. | A155614<br><br>(San Mateo County Super. Ct. No. 16CIV02643) |

The trial court entered judgment dismissing plaintiff and appellant AnneMarie Schilders' legal malpractice suit against defendants Kelly Joe Shindell DeLacey and Sideman & Bancroft LLP (S&B) (collectively defendants) after granting defendants' motion for terminating sanctions, based on Schilders' many months of failing to comply with three discovery orders requiring her to produce documents and a privilege log and to pay monetary sanctions.[1]  Schilders appeals, arguing the court erred for multiple reasons in ordering these sanctions.  We find no error and affirm.

---

    [1] Only S&B sought the relevant discovery but the court granted both defendants' motion for terminating sanctions because it concluded their interests in the discovery were identical.  Schilders does not challenge this part of the order, so we do not address it further.

1

# BACKGROUND

## I.

### *The Underlying Action*

In December 2016, Schilders, represented by attorney Ester Adut, filed an action against DeLacey and S&B (where DeLacey was a partner), including for legal malpractice, breach of fiduciary duty, and breach of contract. She alleged defendants had violated her rights in representing her in a marital dissolution action that had ended in a settlement (underlying action), in that they failed to protect her rights regarding the division of community property, child support, spousal support and attorney fees and costs. She sought unspecified damages in excess of $25,000.

From April 2017 until August 2018, when the court granted defendants' motion for terminating sanctions, Schilders and Adut repeatedly failed for numerous reasons to comply with Schilders' discovery obligations regarding two S&B document requests and three related court orders, which required Schilders to produce sufficient discovery responses, documents and a privilege log. Their failure continued despite S&B's repeated efforts to meet and confer and after the court granted extensions, twice imposed monetary sanctions and denied Schilders' motion for relief under Code of Civil Procedure section 473 regarding one of the requests. Schilders' and Adut's stonewalling efforts are too numerous to mention, but we will describe their most relevant misuses of the discovery process leading up to the court's decision to order terminating sanctions.

## II.

### *S&B's First Document Request*

In April 2017, S&B served its first set of document requests on Schilders seeking 29 categories of documents (first document request).

Among other things, S&B sought all of Schilders' communications with defendants; documents regarding the underlying action; communications related to the underlying action between Schilders and Alfred Lerner, who purportedly advised and helped in the underlying case; and communications about the underlying action between Schilders and attorney Adut before Adut substituted in as counsel for Schilders in the underlying action. S&B requested that Schilders produce the documents requested within 30 days at the law offices of its attorney or at "such other mutually convenient location as may be agreed upon by the parties, and permit inspection, copying and photographing thereof at said time and place."

## A. S&B's July 2017 Motion to Compel

In early July 2017, S&B filed a motion to compel regarding this first document request. S&B contended that Schilders' responses to 26 categories were insufficient, including the ones we have mentioned, and that she had failed to meet and confer with S&B. It moved to compel Schilders to provide a privilege log for documents withheld on privilege grounds, supplement her production with responsive documents, and supplement her response to the first document request by removing meritless objections, and sought monetary sanctions.

Schilders responded that she was not opposed to filing a privilege log, needed additional time to supplement her production, had not made meritless objections and needed more time to respond to S&B's contentions because of the "health conditions" of her attorney, Adut.

On August 9, 2017, the trial court granted S&B's motion to compel regarding most, but not all, of the 26 categories of document requests and ordered Schilders to provide further responses, responsive documents and a privilege log, if applicable, by September 28, 2017 (August 2017 Order),

giving Schilders additional time because of Adut's asserted health issues.[2] The court denied S&B's request for monetary sanctions, but advised Schilders that failure to comply with its order and continued discovery misuse could result "in the imposition of future sanctions, including monetary, issue, evidentiary or terminating sanctions."

Schilders did not comply with the court's August 2017 Order by September 28, 2017. Instead, on that date she filed a motion for an extension of time on the grounds that Adut, despite her best efforts, had been unable to agree with opposing counsel on a protective order and complete the remainder of responses, that DeLacey's spouse was engaging in inappropriate actions in another case against Adut and that Adut's health had not improved. The court denied Schilders' motion because she did not establish good cause for it nor explain why S&B's proposed protective order was unacceptable.

**B. S&B's & DeLacey's October 2017 Motion for Sanctions**

In October 2017, S&B and DeLacey filed a second motion relating to S&B's first document request, this time seeking monetary sanctions for Schilders' failure to comply with the court's August 2017 Order, asserting that she had not provided further responses, responsive documents, or a privilege log, and seeking the appointment of a discovery referee. After conducting a hearing on November 9, 2017, the trial ordered Schilders to pay $3,590 in monetary sanctions and, in compliance with the August 2017 Order, provide further responses, responsive documents and a privilege log, but declined to appoint a discovery referee (November 2017 Order). The trial

---

[2] The court ordered Schilders to produce documents responsive to 17 of the 26 document requests raised by S&B without asserting objections, to eight requests subject to privileges asserted in a privilege log and to one request as narrowed by the court.

4

court again signaled that, "[i]f [Schilders] fails to comply with this order though, [d]efendants may seek further sanctions such as issue, evidentiary, or terminating sanctions, upon properly noticed motion." Schilders was given until December 11, 2017, to comply with the court's order.

Schilders did not comply with the August 2017 Order or the November 2017 Order. She does not contest that at the time the trial court imposed terminating sanctions in August 2018, she had yet to produce numerous categories of documents in violation of the court's August 2017 Order and its November 2017 Order. Defendants assert, and Schilders does not disagree, that prior to the court's imposition of those sanctions, she did not produce 10 boxes of documents that were responsive to S&B's first document request and the court orders, which included all communications regarding the underlying action between Schilders and defendants, Schilders and Lerner, Adut and Lerner; all documents relating to the Underlying Action; all filings, orders and discovery in the underlying action; and all appellate court filings or orders in the underlying action.[3]

Instead, Schilders, through Adut, repeatedly failed to fulfill her obligations for a variety of reasons too numerous to detail here. Most significantly, S&B attempted to meet and confer with Adut about her document production after she contended it was necessary that she have an agent present at all times with the 10 boxes of documents she purportedly was willing to produce, including if the documents were copied by an outside copying service as arranged by S&B. When told the service would not allow her agent to be present, Adut suggested that S&B could copy the 10 boxes of documents at a public library copying machine. She also rejected S&B

---

[3] The record indicates that Schilders produced about 1,000 electronic files and emails, but this production appears to pale in comparison to the 10 boxes of documents she withheld.

counsel's suggestions that the copy service copy the documents at Adut's office, and offered to, but did not, scan the documents and produce them in electronic form (which S&B indicated it did not want).

As for those documents Schilders withheld on the basis of a privilege, such as her communications with Adut relating to the underlying action prior to April 11, 2014, Adut provided S&B with a one-page privilege log in January 2018 listing 22 items, including the amorphous categories of "emails" and "Notes," rather than list for those two categories individual documents with dates, all recipients and a general description of subject matter, i.e., attorney-client privileged "emails" between Schilders and Adut or Adut and Lerner. S&B's counsel promptly informed Adut that she was required to provide a log with particular descriptions of each document withheld and asserted that her communications with Lerner were not privileged. After initially indicating she would provide an amended log, Adut asserted that she was not required to provide any more particularity about withheld communications between herself and Schilders, and did not provide an amended log. Schilders also did not pay the monetary sanctions ordered by the court in its November 2017 Order.

## II.

### *S&B's Second Document Request*

In June 2017, S&B served its second set of document requests to Schilders (which contained only one request), in which it sought Schilders' "cellphone records . . . for any cellphone that [Schilders] used at any time during the time period of January 1, 2013 to April 10, 2014," when defendants were representing Schilders in the underlying action (second document request). In her unverified response dated August 17, 2017, Schilders stated that she had "cell phone records for the period from 9/5/13 to

3/14/14" but would not produce them based on privacy and relevance objections.

In October 2017, S&B moved to compel Schilders' production of documents responsive to this second document request. S&B argued the phone records were relevant to its defense because Schilders, while represented by defendants in the underlying action, received advice from others in the period leading up to the settlement of the case. S&B further argued that Schilders' failure to verify her response was tantamount to no response and a waiver of all her objections, and that in any event her objections lacked merit.

In her opposition, Schilders stated that Adut had a "medical disability" and "jurisdictional deadlines"; had been extremely sick; that her phone records could be obtained from her phone company for $5.00 per statement; and that her phone records were not relevant, contained private communications and were unprotected by a protective order. She did not address S&B's arguments about the unverified nature of her discovery response.

The court issued a tentative ruling granting S&B's motion and adopted this ruling after Schilders did not contest it, then filed a written order on December 4, 2017 (December 2017 Order). It ordered Schilders to serve a verified discovery response without objections and ordered Schilders and Adut to pay $1,330 in monetary sanctions. Schilders was given until January 9, 2018 to comply.

In mid-January, Schilders served an "additional response" to S&B's second document request in which she stated she would produce all documents in her possession, custody or control, "other than documents that the phone company has but [Schilders] does not have and never had and for

7

which the court has not yet heard her objections on their merits." She contended the court erroneously determined that she waived all her objections and indicated she would seek to have the order vacated or set aside. She produced invoices pertaining to her cell phone records and the $1,330 in sanctions were paid by a third party, apparently on Adut's behalf.

In late January 2018, Schilders served a verified second additional response to S&B's second document request, stating that she would serve a subpoena on her telephone company. Adut sent S&B's counsel a proposed subpoena and information about the cost involved. S&B's counsel responded with a revised subpoena, advised that the phone company required Schilders' cell phone number and authorization (a draft of which counsel provided with the revised subpoena), and confirmed that S&B would cover the costs involved. Soon thereafter, Adut indicated that Schilders would not cooperate in subpoenaing her phone records after all, stating, "I believe that a court order compelling my client to sign the authorization for a subpoena on her cellular telephone provider would be erroneous."

## III.

### *Schilders' Motion for Relief*

On February 8, 2018, Schilders moved under Code of Civil Procedure section 473 for the trial court to vacate its December 2017 Order based on Adut's mistake, inadvertence or excusable neglect for her failing to challenge the court's tentative ruling regarding S&B's second document request, including because the trial court mistakenly ruled that Schilders had waived her objections by failing to timely serve a verified response (motion for relief). Defendants opposed this motion for relief, arguing that Schilders had stated in her discovery response that she would subpoena her cell phone records and that Schilders' motion was an improper change in litigation strategy.

8

On April 13, 2018, after hearing argument, the trial court ruled that it would adopt its tentative ruling (with a minor change) denying Schilders' motion for relief. In that ruling, along with concluding that the motion was defective for lack of a notice of motion, the court found Schilders had had ample opportunity to object to the trial court's entry of the December 2017 Order and move for reconsideration of that order, had paid the sanctions ordered and had met and conferred regarding subpoenaing her phone records before abruptly changing course. These facts, the court concluded, did not show excusable conduct but instead showed "a change in . . . litigation strategy." The court also "affirmed" and clarified its December 2017 Order. The court addressed the merits of Schilders' privacy and relevance objections to the second document request and concluded they lacked merit. It also held that, to the extent Schilders sought reconsideration of the December 2017 Order, she was untimely and failed to show any new or different facts, circumstances or law as required by statute.

The court instructed defendants to submit a written order to the court denying Schilders' motion for relief.

## IV.

### *Defendants' Motion for Terminating Sanctions*

On February 23, 2018, defendants moved for terminating sanctions (or, in the alternative, issue sanctions) based on Schilders' failure to comply with the August 2017, November 2017 and December 4, 2017 Orders (motion for terminating sanctions). They argued Schilders had not complied with these orders; specifically, that she had failed to produce all responsive documents and communications, failed to provide a privilege log in compliance with California law, failed to produce cell phone records and failed to pay all monetary sanctions. Defendants also sought monetary sanctions.

9

Defendants contended they "need[ed] the entirety of [Schilders']
documents from the Underlying Action because this is a malpractice action
asserting that the settlement of such action was mishandled. Further,
[Schilders] continues to litigate the Underlying Action, has challenged the . . .
Judgment, and has a duty [to] mitigate." Also, the communications
defendants were seeking related to their "fault of others" affirmative defense
because "[i]n the key time period leading up to, during and following
[Schilders'] settlement of the Underlying Action in November 2013,
[Schilders] was receiving and relying upon advice—legal or otherwise—from
Ms. Adut and Dr. Lerner." Defendants further maintained that, because
Schilders received legal advice from Adut regarding the underlying action
between May 2013 to April 2014, she was required to produce a privilege log
identifying each of her communications with Adut that she had withheld and
to produce her cell phone records, which were relevant because they could
show the frequency and timing of communications with both Adut and
Lerner.

Schilders opposed the motion (and sought a continuance regarding it),
contending, among other things, that DeLacey was not entitled to sanctions
based on discovery served by S&B; she would have made her documents
available under the supervision of her agent but S&B had insisted on their
copy service taking the documents away; S&B refused to agree that
documents produced in scanned form satisfied the document demand; S&B
was not entitled to a detailed privilege log because it had not moved for one;
sanctions for her actions regarding the phone records would be improper
because of the court's erroneous conclusion that she had waived all her
objections to their production; she could not be sanctioned for withholding
confidential communications between Lerner and his attorney, meaning

10

Adut; her failure to pay monetary sanctions was not a ground for further sanctions; and the requested sanctions were otherwise unwarranted.

At the initial hearing on defendants' motion for terminating sanctions, after indicating in its tentative ruling that it was inclined to grant the motion at least regarding S&B, the trial court continued the hearing so the parties could submit supplemental briefs on whether DeLacey had standing to seek terminating sanctions. The parties subsequently filed supplemental briefs.

Meanwhile, on June 12, 2018, Adut asked whether S&B would accept paper or scanned copies of 10 boxes of documents and "agree to a nondisclosure agreement so that the phone numbers [in the cell phone records] of anyone but [herself] and Mr. Lerner not be disseminated," and argued, once again, that her communications with Lerner were privileged. Respondents replied that, among other things, the court had already indicated it would impose terminating sanctions regarding at least S&B, that Schilders had ignored concrete deadlines and that her latest communication failed to "address all of the materials that the court has repeatedly ordered [Schilders] to produce," thereby demonstrating that, "yet again, . . . [she was] attempting to re-litigate an issue upon which the court has already ruled."

At the further hearing on defendants' motion for terminating sanctions on July 20, 2018, Adut acknowledged that Schilders had yet to turn over all the documents requested by S&B's counsel but said that a couple of weeks before she had offered to deliver the documents to S&B's counsel, who had said it was too late. The court replied, "Well, I can understand why he said that. It seems the train left the station a long time ago." The court found Schilders' positions regarding the privilege log lacked merit and noted that Schilders had not acted reasonably, such as by moving for reconsideration of the court's order or taking other timely action. The court told Adut, "And you

11

didn't challenge the order, so you're, basically, stuck with it. And you're still saying, I don't care about the court order, I'm just not going to comply with it. [¶] . . .[¶] I mean, that's just one of many things."

On August 20, 2018, the trial court entered a written order that denied Schilders' motion for relief, consistent with its oral pronouncement at the conclusion of the April 2018 hearing on that motion. On the same date, it also issued a written order granting defendants' motion for terminating sanctions against Schilders because of her failure to comply with the three orders the court had issued in August 2017, November 2017 and December 2017. In its order imposing terminating sanctions the court, relying on provisions of the Code of Civil Procedure that authorize a court to impose terminating sanctions for a party's failure to comply with its discovery orders, found, "[Schilders] and her counsel have shown continued disregard for this Court's Orders, despite having been given two prior warnings that compliance with discovery was necessary in order to avoid more severe sanctions. Accordingly, terminating sanctions are appropriate. [Schilders'] Complaint against both Defendants is dismissed with prejudice."[4]

The court subsequently entered a judgment of dismissal in favor of defendants. Schilders timely filed a notice of appeal from the court's judgment.

## DISCUSSION

Schilders makes a plethora of arguments in challenging the court's order imposing terminating sanctions for her failure to comply with her discovery obligations. Many of Schilders' arguments are unsupported by the

---

[4] The trial court ruled that DeLacey "has adequately demonstrated that her discovery interests and interests in the litigation are identical with [S&B's], and that she is prejudiced equally by [Schilders'] continued failure to comply with this Court's discovery orders."

12

record or legal argument and utterly fail to show why she was not required to comply with the court's three discovery orders, particularly regarding the court's December 2017 Order and its later order denying Schilders' motion for relief. But at the core of Schilders' appeal are multiple arguments that the trial court abused its discretion and violated her due process rights by ordering terminating sanctions. The court did not err. As we will discuss, Schilders repeatedly defied the court's orders over many months despite repeated warnings, and there was no end in sight to her noncompliance when the court ordered terminating sanctions. We find no error in the court's decision.

## I.

### *Legal Standards*

The trial court cited Code of Civil Procedure section 2023.010, subdivision (g) as a basis for ordering terminating sanctions against Schilders. Section 2023.010, subdivision (g) defines a misuse of the discovery process to include, among other things, "[d]isobeying a court order to provide discovery" and authorizes a range of sanctions for conduct amounting to "misuse of the discovery process," including terminating sanctions. The court also cited Code of Civil Procedure sections 2023.030, subdivision (d), 2031.300, subdivision (c) and 2031.310, subdivision (i), which authorize a court to impose issue, evidence or terminating sanctions against a party who fails to obey a court order compelling a response or a further response to a document request.

" ' "Misuse of the discovery process includes failing to respond or submit to authorized discovery, providing evasive discovery responses, disobeying a court order to provide discovery, unsuccessfully making or opposing discovery motions without substantial justification, and failing to meet and confer in

13

good faith to resolve a discovery dispute when required by statute to do so." ' " (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1285, italics omitted.)  The court may impose terminating sanctions for misuse "after considering the totality of the circumstances:  conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246.)  "Generally, '[a] decision to order terminating sanctions should not be made lightly.  But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.)

The trial court has broad discretion in imposing discovery sanctions, subject to reversal " 'only for manifest abuse exceeding the bounds of reason.' " (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1293.)  This includes orders imposing terminating sanctions for discovery noncompliance. (See *Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702 [applying abuse of discretion standard for appeal of terminating sanctions order].)

Under this abuse of discretion standard, we review the trial court's factual determinations under the substantial evidence standard and infer all findings necessary to support the discovery sanctions.  (*Reedy v. Bussell, supra,* 148 Cal.App.4th at p. 1292.)  We do not evaluate the sufficiency of opposing evidence; rather, our " 'power . . . begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact].' " (*Los Defensores, Inc. v. Gomez, supra,* 223 Cal.App.4th at pp. 390-391.)

14

## II.

### *The Trial Court Did Not Abuse Its Discretion by Issuing Terminating Sanctions.*

#### A. The Court Did Not Abuse Its Discretion in Ordering Terminating Sanctions Based on Schilders' Noncompliance with Three of Its Orders.

As we have discussed, Schilders does not contest that at the time the trial court imposed terminating sanctions in August 2018, she had failed to produce numerous categories of documents in violation of the court's August 2017 and November 2017 Orders. Nor had she provided a legally sufficient privilege log for the documents she was withholding on grounds of privilege or paid the $3,590 in monetary sanctions imposed by the court in its November 2017 Order. The trial court relied on all of these failures in ordering terminating sanctions.

Regarding S&B's second document request and the court's December 2017 Order, Schilders did not produce or arrange for production of her cell phone records for the period from January 1, 2013, to April 10, 2014, or provide S&B with a legally sufficient privilege log. Despite her verified response to the second document request in January 2018 stating she would subpoena her phone company for these records, she failed to do so and failed to cooperate when S&B sought to subpoena the records.

Rather than comply with the court's orders, Schilders repeatedly failed to fulfill her obligations. Schilders fails to explain how she or her attorney complied with the court's August 2017 and November 2017 Orders. She essentially reasserts the same excuses for failing to produce documents that the trial court considered and rejected, including that she was entitled to insist that an agent of hers be present with the documents at all times, thus precluding S&B from sending the documents to be copied. She fails to explain why she was unable to meet and confer in good faith with S&B to find

15

an acceptable solution or why she never sought a protective order requiring her agent to be present with the 10 boxes of documents. The record supports the trial court's finding that Schilders and Adut had continually disregarded the court's orders that they produce documents responsive to most of the requests contained in the first document request or assert a privilege regarding the others that had been withheld.

Regarding the privilege log, Schilders listed broad, vaguely described categories of potentially relevant documents, for such things as her communications with Adut and Lerner while defendants were representing her in the underlying action, rather than identifying each withheld document by the sender and recipients, the general subject matter and the date the document was sent. This information was plainly required. " 'The purpose of a "privilege log" is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production.' " (*Best Products, Inc. v. Superior Court* (2004) 119 Cal.App.4th 1181, 1188.) "A privilege log must identify with particularity each document the responding party claims is protected from disclosure by a privilege and provide sufficient factual information for the propounding party and court to evaluate whether the claim has merit." (*Catalina Island Yacht Club v. Superior Court* (2015) 242 Cal.App.4th 1116, 1130 (*Yacht Club*), citing Code of Civil Procedure sections 2031.240, subds. (b) & (c), see also *Yacht Club*, at p. 1129, fn. 5 [a privilege log that "fails to provide any description of documents or their contents other than to state they are e-mails" "is not sufficient to allow a determination whether the documents are privileged"].) As a result, "a privilege log typically should provide the identity and capacity of all individuals who authored, sent, or received each allegedly privileged document, the document's date, a brief

16

description of the document and its contents or subject matter sufficient to determine whether the privilege applies, and the precise privilege or protection asserted." (*Id*. at p. 1130.)

Schilders contends she was not required to provide more specific information, relying on *Los Angeles Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 298 (*Los Angeles*). That case is inapposite. It addressed the information a party was required to provide regarding its attorney's billing records. The court also held that the privilege "does not . . . shield everything in a billing invoice from . . . disclosure" (*id*. at p. 288) and that "the contents of an invoice are privileged only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose. This latter category includes any invoice that reflects work in active and ongoing litigation." (*Id*. at p. 300.) The *Los Angeles* case was concerned in part with spending information contained in billing records related to ongoing litigation that could reveal legal strategy. (*Id*. at p. 298.) No such information was at issue here. Schilders does not contend invoices were among the withheld documents, much less emails from ongoing litigation. Rather, the issue is emails between Adut and Schilders and Adut and Lerner (a third party) pertaining to prior litigation that had long since been settled (regardless of any actions Schilders might since have taken to challenge the result of that case). The *Los Angeles* case provides no basis for Schilders' argument that she was not required to produce a detailed privilege log identifying each email she claimed was privileged with sufficient information to evaluate the privilege claim. (See *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 640 [attorney-client privilege does not protect "independent facts related to a communication," such as "that a communication took place, and the time,

17

date and participants in the communication"]; *Coy v. Superior Court* (1962) 58 Cal.2d 210, 219-220 [date on which client met attorney is not privileged because it "is not a matter 'communicated' by the client to his attorney in the course of the professional relationship, or at all"].) Further, if Schilders had any legitimate concern about the privilege log revealing privileged information, she could have sought an appropriate protective order, but she did not.

Schilders also argues the trial court should have given her an opportunity to provide a supplemental privilege log, relying on *Yacht Club*, *supra*, 242 Cal.App.4th at page 1130, which held that in the face of an insufficient privilege log, the trial court should have ordered the party to provide a supplemental privilege log rather than require production of documents claimed to be privileged. In relying on the *Yacht Club* case, Schilders again misses the boat.

There, the issue was whether a trial court erred in ruling that parties responding to discovery waived their privilege objections because the privilege log they provided failed to describe the subject matter or content of the documents. (*Yacht Club*, *supra*, 242 Cal.App.4th at p. 1121.) The defendants, who were the responding parties, had provided a privilege log prior to the plaintiff's filing a motion to compel, but the plaintiff then moved to compel the defendants to produce the allegedly privileged documents because the log contained for each document only the date and that it was between defendants and their counsel. During a meet-and-confer process, the parties had agreed that defendants would supplement their privilege log to identify the sender and recipients of each communication, but the agreement said nothing about describing the content or subject matter of the communications. (*Id.* at p. 1122.) The defendants twice amended the log as

agreed, adding more and more documents to it each time. (*Id*. at pp. 1122-1123.) Thereafter, the plaintiff moved to compel production of the documents listed on the log on the ground that defendants waived the privilege by failing to provide a log that contained sufficient information to enable the plaintiff to evaluate the privilege claims. (*Id*. at p. 1123.) The trial court granted the motion and ordered the plaintiff to produce the documents and pay sanctions. (*Ibid*.)

The court of appeal reversed, holding that the failure to provide a privilege log or an adequate privilege log is not an authorized basis for holding the privilege has been waived. (*Yacht Club*, *supra*, 242 Cal.App.4th at p. 1126.) Instead, the court can order the responding party to provide a further response by serving a privilege log or a supplemental privilege log that provides adequate information. (*Id*. at pp. 1127, 1129.) Notably, the court went on to say, "If the responding party thereafter fails to adequately comply with the court's order and provide the information necessary for the court to rule on the privilege objections, the propounding party may bring another motion seeking a further response or a motion for sanctions. At that stage, the sanctions available include evidence, issue, and even terminating sanctions, in addition to further monetary sanctions." (*Id*. at p. 1127.)

In this case, the court did not hold that Schilders *waived the privilege* by failing to provide a privilege log in response to S&B's first document request. Rather, it imposed a terminating *sanction* after Schilders had violated the terms of the court's August 2017 Order by failing to produce requested documents *and* failing to provide any privilege log at all, forcing S&B to file a second motion to compel, and thereafter continuing to withhold discovery and provide an adequate privilege log even after a second motion to compel was granted. Schilders' ongoing failures to comply with her discovery

19

obligations and with two different orders compelling her to comply fully justified the court in imposing the terminating sanction. Indeed, the *Yacht Club* case supports its ruling.

Further, Schilders and Adut knew the court was contemplating terminating sanctions for their willful noncompliance long before the court imposed them. The court twice issued monetary sanctions against Schilders and Adut in the November 2017 Order and the December 2017 Order, and they failed to pay the larger of these sanctions. In April 2018, the court orally denied Schilders' motion for relief, making it eminently clear that Schilders was required to comply with its three previous orders by producing documents and a privilege log and paying all of the monetary sanctions imposed. Yet Schilders continued her willful noncompliance with the court's orders for the next four months until the court ordered terminating sanctions.

Thus, by August 2018, sixteen months after they had served their first document request, S&B and DeLacey had little to show for their efforts, and Schilders and Adut continued to violate the court's orders despite repeated monetary sanctions and warnings from the court that it would consider imposing terminating sanctions if they continued their noncompliance. Under these circumstances, the court acted well within its discretion to order terminating sanctions against Schilders.

Schilders also argues she "substantially complied" with the trial court's three discovery orders, relying heavily on her purported willingness to produce documents that remained in the presence of her agent. Therefore, she contends, the court's imposition of terminating sanctions was an abuse of its discretion. We disagree. The record does not show that she complied, substantially or otherwise, and Schilders cites no legal authority indicating a subjective "willingness" to comply without actual compliance satisfies her

discovery obligations or entitles her a get-out-of-jail-free card. The court concisely captured the meritless nature of Schilders' position when it told Adut 11 months after issuing its August 2017 Order, "[Y]ou didn't challenge the order, so you're, basically, stuck with it. And you're still saying, I don't care about the court order, I'm just not going to comply with it."

Nor did the court act precipitously when it imposed terminating sanctions. Despite Schilders' chronic stonewalling and delays, the trial court gave her multiple opportunities to comply with its orders. For example, the court extended the deadline for complying with its August 2017 Order by a month upon learning of Adut's medical troubles. It acted patiently throughout the process, even rescheduling the hearing on defendants' motion for terminating sanctions when Adut arrived unannounced at the courthouse on July 3, 2018, after failing to indicate that she was contesting the court's tentative ruling, and giving Adut an additional opportunity to submit late briefing.

In short, under all of the circumstances, the court here in no way abused its discretion when it finally ordered terminating sanctions. (See, e.g., *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 [court ordered terminating sanctions after the defendant flouted four discovery orders, remarking that "[i]f a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse"]; *Rail Services of America v. State Comp. Ins. Fund* (2003) 110 Cal.App.4th 323, 331 [affirming terminating sanctions order where the plaintiffs' "refusal to comply with discovery was straightforward and unambiguous, and it was clear that they would not provide discovery"].)

21

We turn now to Schilders' other arguments for why the court abused its discretion by ordering terminating sanctions, none of which are persuasive.

**B. The Court's "Affirmation" of Its December 2017 Order Did Not Alter the Import of That Order, Which S&B Did Not Obtain by Fraud.**

Schilders argues at great length, and unconvincingly, that S&B obtained the court's December 2017 order to produce her cell phone records by "fraud" and, relatedly, that the court was somehow beyond its jurisdiction to issue the December 2017 Order. We will not dissect each of Schilders' "fraud" arguments because she neither shows that any fraud occurred or how or why it supposedly invalidated the court's December 2017 Order. Nor will we respond to her "lack of jurisdiction" argument because of her failure to support it with a pertinent explanation of any apposite legal authority, thereby failing to overcome the presumption that the trial court's order was correct. (See *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520, 525 [party's "sparse legal citations" and questions about the court's ruling do not "meet his duty as appellant to affirmatively show the court erred" and "is reason enough to reject his claim"].)

The only part of her "fraud" argument that is of any significance is her correct assertion that the trial court erred when it ruled, based on S&B's argument, that her failure to provide a verified response to S&B's second document request was a waiver of all her objections. Such a response is not a waiver of objections. (*Food 4 Less Supermarkets, Inc. v. Superior Court* (1995) 40 Cal.App.4th 651, 658 [timely objections not waived by the lack of a verification].) Nonetheless, S&B's incorrect argument was hardly fraud.

Also, Schilders did not timely move to reconsider the court's December 2017 Order or seek a writ in the appellate court to challenge it. Therefore, she was required to comply with the court's December 2017 Order,

22

regardless of any error.  (See *Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1172 ["a party may not defend against enforcement of a court order by contending merely that the order is legally erroneous"]; *In re Marriage of Niklas* (1989) 211 Cal.App.3d 28, 34-35 ("Because [the party] failed to seek direct review of the discovery order in a timely manner and instead violated the order, the trial court's order imposing sanctions must be upheld even if the discovery order was erroneous"].)

Regardless, in April 2018, the court indicated in its denial of Schilders' motion for relief that it was affirming its December 2017 Order and, furthermore, that it had reviewed Schilders' objections to the second document request and concluded that they lacked merit.  The plain import of the court's affirmation was that Schilders still had to produce her cell phone records pursuant to the December 2017 Order, regardless of whether she had preserved her objections in her unverified response.

Schilders argues that the trial court's purportedly sua sponte affirmation of its December 2017 Order was in excess of its jurisdiction because she was not given the opportunity to address the court's reconsideration of that order before it ruled that her objections lacked merit, citing *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103.  This argument is specious.

At the April 2018 hearing, the court addressed arguments made by Schilders in a motion, filed two months after the court issued its December 2017 Order, for relief from that order on grounds of alleged "mistake, inadvertence, or excusable neglect."  In that motion, Schilders argued that the trial court had erred in ruling her response to S&B's second document request was untimely for lack of a verification and that she had therefore waived all objections and that absent that mistake and her

23

attorney, Adut's, failure to object to the tentative ruling, the court would have ruled differently. With that motion, Schilders filed "objections" to the tentative ruling and minute order of the trial court in November 2017 and the resulting December 2017 Order, arguing that they were legally erroneous. As the court recognized, in so arguing Schilders was effectively rearguing, i.e., seeking reconsideration of the December 2017 Order, and the court held that any such motion was untimely. It then stated that it had nonetheless reviewed the prior order and the briefs in connection with it and, in essence, found no error. Specifically, the documents S&B sought were relevant, the objections Schilders had made were meritless, and thus even assuming the responses had been timely the court would have ordered Schilders to produce the documents. The trial court's use of the phrase "sua sponte" was inapt. Plainly, the trial court was addressing the arguments Schilders raised in her motion. Nor was Schilders denied the opportunity to address the merits of her objections. She argued the court would have decided the motion differently had it not been for the purported mistakes. That she chose not to argue the merits of her objections to the discovery in her motion for relief did not preclude the court from addressing the issue she raised as to how it would have ruled had the timeliness of her responses not been an issue.

Finally, Schilders argues she did not have an opportunity to comply with the court's affirmation of its December 2017 Order because the court did not issue a formal written order affirming that order until August 2017, at the same time it ordered terminating sanctions. This argument lacks merit. Schilders was required to comply with the court's December 2017 Order once it was issued in December 2017. Her motion for relief from it, two months

thereafter, which the court denied,[5] did not entitle her to more time to comply with that order. She had already failed to comply with the order for four months, not to mention having failed to comply with the August 2017 and October 2017 Orders.

### C. The Court Did Not Abuse Its Discretion by Dismissing the Entire Complaint Based on Schilders' Discovery Abuses.

Finally, Schilders argues the trial court's imposition of terminating sanctions based on her noncompliance was an abuse of discretion and deprived her of due process, primarily because her failure to produce "some . . . documents" regarding her phone communications was only relevant to S&B's affirmative defense of contributory negligence regarding Schilders' malpractice claim, and was not relevant to her other two causes of action, for breach of contract and breach of fiduciary duty. We disagree for three reasons.

First, Schilders misconstrues the court's order terminating sanctions, which dismissed all causes of action because Schilders disobeyed *three* discovery orders, including two pertaining to documents other than the phone communications called for in S&B's first document request.

Second, Schilders concedes that she failed to produce 10 boxes of documents that were responsive to S&B's first document request and that the court's orders in August 2017 and November 2017 required her to produce. As S&B points out, it is impossible to determine what documents were relevant to which of Schilders' causes of action in the absence of a production, but it appears from the document requests themselves that the documents sought very well could have been relevant to defendants' defenses against all of Schilders' causes of action, since they involved matters about the underlying action, as well as communications involving Schilders regarding

---

[5] The court also denied her request for a stay of the order.

25

the underlying action at a time when S&B was representing Schilders in that action. Regardless, Schilders, as appellant, has the burden of affirmatively showing error. (*Tanguilig v. Valdez, supra*, 36 Cal.App.5th at pp. 520, 525.) She has not done so. Therefore, her argument fails.

Third, Schilders' argument that an entire case should not be dismissed because of discovery noncompliance regarding only one of three causes of action is not the law. A very similar argument was rejected in *Siry Investment, L.P. v. Farkondehpour* (2020) 45 Cal.App.5th 1098, petition for review granted July 8, 2020, S262081. The court explained that "it is inconsistent with the law governing discovery sanctions. That law grants trial courts 'broad' discretion to consider 'the totality of the circumstances' in making the sanction fit the violation. [Citation.] [The] proffered rule would trade this flexibility for ossification by converting one factor—namely the breadth of the issues involved in the discovery—from a relevant circumstance into a dispositive one. [Citation.] It would also require courts to endure 'defiant disobedience' of their orders compelling discovery if those orders pertained to discovery addressing fewer than all the issues in a case, even though trial courts are 'not required to allow . . . abuse to continue ad infinitum.' [Citations.] Not surprisingly, courts have rejected [the proffered] rule." (*Id.* at p. 1120; see also *id.* at p. 1122 [showing prejudice due to noncompliance not required to obtain terminating sanctions because "selective lawlessness is still lawlessness"]; *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 928-929 [affirming terminating sanctions after nearly a year of discovery noncompliance regarding element of causation only].) We follow these courts. Assuming for the sake of argument that Schilders' noncompliance only denied defendants discovery relating to a defense to one of Schilders' three causes of action, we nonetheless conclude

26

the court did not abuse its discretion in imposing terminating sanctions in light of her sixteen months of continual, willful noncompliance regarding two document requests and three court orders.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs of appeal.

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MILLER, J.

*Schilders v. Shindell DeLacey* (A155614)